2004 WY 102

**Chandler Alan INGERSOLL, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Chandler Alan Ingersoll, Appellant (Defendant),**

v.

**The State of Wyoming, Appellee (Plaintiff).**

**Nos. 03–124, 03–125.**

Supreme Court of Wyoming.

Sept. 2, 2004.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Daniel M. Fetsco, Assistant Attorney General. Argument by Mr. Fetsco.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] This case involves appeals from the judgment and sentence convicting appellant Chandler A. Ingersoll of one count of felony possession of methamphetamine and one count of misdemeanor possession of marijuana, both in violation of Wyo. Stat. Ann. § 35–7–1031 (LexisNexis 2003). Ingersoll contends the district court erred when it denied his motion to withdraw his guilty pleas and rehear his suppression motion. Ingersoll also asserts that his appointed attorney provided ineffective assistance of counsel. Upon review, we affirm.

### ISSUES

[¶ 2] Ingersoll sets forth the following issues on appeal:

I. Whether the trial court abused its discretion in not allowing appellant to withdraw his guilty pleas?

II. Whether appellant should be allowed to withdraw his pleas because he was prejudiced by ineffective assistance of defense counsel?

Appellee State of Wyoming essentially agrees with the issues as stated.

### FACTS

[¶ 3] As set forth in the Affidavit Supporting Complaint, while on patrol on May 26, 2002, at approximately 11:03 p.m., Officer Bjorklund of the Casper Police Department observed Ingersoll change lanes without signaling. At an intersection, Officer Bjorklund also saw Ingersoll come to a stop at a red light, then pull into traffic, and stop again to avoid oncoming traffic. Later, Ingersoll turned down a street and began driving in

both lanes of traffic. Accordingly, Officer Bjorklund stopped Ingersoll in his vehicle.

[¶ 4] Officer Bjorklund asked to see Ingersoll's driver's license, vehicle registration, and proof of insurance. Ingersoll produced his driver's license but advised that the vehicle he was driving was not his. A bill of sale and proof of insurance covering the vehicle were produced. Upon a status check, Officer Bjorklund was advised that Ingersoll's driving status was clear and there were no outstanding warrants. Officer Bjorklund then returned to Ingersoll his license and other paperwork and issued a verbal warning for the traffic violations.

[¶ 5] Subsequently, Officer Bjorklund told Ingersoll of his drug interdiction duties and asked if he could search the vehicle Ingersoll was driving. Ingersoll agreed that Officer Bjorklund could search the vehicle. Before Officer Bjorklund searched the vehicle, Ingersoll voluntarily exited the vehicle. Officer Bjorklund then asked that Ingersoll stand on the curb next to the patrol vehicle. Officer Bjorklund also asked Ingersoll if he had anything on his person. Ingersoll produced a pack of cigarettes and other items. When Officer Bjorklund reached for the pack, Ingersoll jerked it away from him. Officer Bjorklund asked Ingersoll what was inside of the pack of cigarettes, whereupon Ingersoll opened the pack. Within the pack Officer Bjorklund observed a plastic bindle containing methamphetamine.

[¶ 6] Officer Bjorklund then radioed for a transport vehicle. When Officer Jenkins eventually arrived on the scene, Ingersoll was formally advised of his arrest and was patted down. This rendered discovery of a bag of marijuana in the possession of Ingersoll. Ingersoll was then taken into custody.

[¶ 7] Ingersoll was formally charged on May 28, 2002, with the information being later amended June 4, 2002. A public defender was appointed to represent Ingersoll, and Ingersoll pled not guilty to both counts as charged. Ingersoll's defense counsel then filed a demand for discovery. This was followed by a motion to suppress contending that the search of Ingersoll's person and possessions was nonconsensual, unsupported by probable cause, and in violation of Inger-

soll's constitutional rights. At hearing, Officer Bjorklund testified, in part, that he first came in contact with Ingersoll just prior to witnessing his driving performance. Officer Bjorklund was not asked about nor did he independently divulge the existence of a videotape of the traffic stop. He also stated that when he is given permission to search a vehicle, he routinely asks the driver to step to the curb for the driver's safety and conducts a pat down search of the driver for his own safety. He further testified that Ingersoll had voluntarily given him permission to search the vehicle. On the other hand, Ingersoll testified that he never gave Officer Bjorklund consent to search the vehicle, his person, or his possessions. Eventually, the district court denied Ingersoll's motion, finding that probable cause existed for stopping the vehicle driven by Ingersoll, that consent was given to search the vehicle, and that the methamphetamine was properly discovered under a plain view analysis.

[¶ 8] After the suppression hearing but prior to trial, Ingersoll was informed that a videotape of the traffic stop might exist. Ingersoll's counsel formally requested that this videotape be produced, and trial in this matter was postponed. The videotape was ultimately turned over to Ingersoll's counsel for review. The videotape clearly showed that when Officer Bjorklund requested permission to search the vehicle, Ingersoll advised Officer Bjorklund that he could "have at it."

[¶ 9] After review of the videotape, Ingersoll changed his pleas to guilty at a hearing held on November 5, 2002. Judgment and Sentence was entered on February 24, 2003.

[¶ 10] On March 5, 2003, Ingersoll filed a Motion to Withdraw Guilty Plea and Rehear Defendant's Motion to Suppress claiming that the videotape demonstrated that the traffic stop was a mere pretext to look for drugs. In filing this motion, Ingersoll relied on statements made by Officer Bjorklund at the end of the traffic stop videotape that Officer Bjorklund had initially come into contact with Ingersoll when he saw Ingersoll go into a known "dope" house prior to witnessing Ingersoll's driving performance. Later,

Officer Bjorklund testified that he did initially see Ingersoll go into a known "dope" house for a few minutes but that he lost contact with Ingersoll for a period of time after he exited the home. Officer Bjorklund was then able to relocate Ingersoll and witnessed his driving performance. After hearing, the district court denied Ingersoll's motion to withdraw his guilty pleas and rehear the motion to suppress, finding that Ingersoll had not shown manifest injustice as required by W.R.Cr.P. 32(d).

[¶ 11] Ingersoll filed a Notice of Appeal concerning his Judgment and Sentence on March 26, 2003 and a second Notice of Appeal concerning his motion to withdraw plea on May 29, 2003. The appeals filed by Ingersoll were consolidated by this court.

### STANDARD OF REVIEW

[¶ 12] We recognized in *Herrera v. State*, 2003 WY 25, ¶ 9, 64 P.3d 724, ¶ 9 (Wyo.2003), that the standard for withdrawing a plea of guilty either before or after sentencing is governed by W.R.Cr.P. 32(d). If a motion for withdrawal of a plea of guilty is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. The standard for withdrawing a plea of guilty after sentencing requires the defendant to show "manifest injustice." Furthermore, we review whether a trial court properly denied a post-sentence motion for withdrawal under an abuse of discretion standard of review. In deciding whether or not a trial court abused its discretion, this court must "determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." *Herrera*, at ¶ 10; *see also Burton v. State*, 2002 WY 71, ¶ 44, 46 P.3d 309, ¶ 44 (Wyo.2002); *Cook v. State*, 7 P.3d 53, 58–59 (Wyo.2000); *Vaughn v. State*, 962 P.2d 149, 152 (Wyo.1998).

[¶ 13] In *Kitzke v. State*, 2002 WY 147, ¶ 9, 55 P.3d 696, ¶ 9 (Wyo.2002) (quoting *Mehring v. State*, 860 P.2d 1101, 1112–13 (Wyo.1993)), we recognized:

The examination of a claim of ineffective assistance of counsel requires a showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Dickeson v. State*, 843 P.2d 606, 609 (Wyo.1992) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). When a guilty plea is challenged based on ineffective assistance of counsel, the defendant, to establish prejudice, must show that there is a reasonable probability that, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial. *Hill [v. Lockhart]*, 474 U.S. [52] at 59, 106 S.Ct. [366] at 370 [88 L.Ed.2d 203 (1985)]. The *Hill* standard was adopted by Wyoming in *Lower v. State*, 786 P.2d 346, 349 (Wyo.1990). A strong presumption is invoked that counsel rendered adequate and reasonable assistance. *Gist v. State*, 737 P.2d 336, 342 (Wyo.1987). The burden is on the defendant to overcome this presumption. *Dickeson*, 843 P.2d at 609.

[¶ 14] We also recently clarified in *Wilson v. State*, 2003 WY 59, ¶ 6, 68 P.3d 1181, ¶ 6 (Wyo.2003), that under the two-prong standard, an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to render such assistance as would have been offered by a reasonably competent attorney and that counsel's deficiency prejudiced the defense of the case.

### DISCUSSION

#### Refusal to Allow Withdrawal of Guilty Plea

[¶ 15] Ingersoll argues the district court abused its discretion when it denied his motion for the withdrawal of his guilty pleas. In essence, Ingersoll asserts that, because the State failed to disclose the videotape of the traffic stop in a timely fashion, he and his counsel were forced to hurriedly review the videotape whereby they both missed Officer Bjorklund's statement at the end of the videotape that Officer Bjorklund first encountered Ingersoll when he saw him go into a

known "dope" house. Thus, Ingersoll contends that because he was unaware of this statement by Officer Bjorklund, he could not have made a voluntary guilty plea to each of the counts alleged against him.[1] Upon our review of the facts in this case, we cannot agree.

[¶ 16] While we certainly do not approve of the State's failure to produce the videotape until after the suppression hearing or Officer Bjorklund's failure to disclose his initial observation of Ingersoll at the "dope" house and the existence of the videotape, the facts show that the State provided the videotape to Ingersoll on October 9, 2002. Although trial was originally scheduled to begin on September 23, 2002, this date was postponed until October 21, 2002, upon Ingersoll filing a stipulated order for continuance based, in part, on his anticipation of receiving the videotape at a late date. Thereafter, the State, apparently at Ingersoll's insistence, requested that a change of plea hearing be scheduled on October 21, 2002, with no plea agreement having been reached in this case. On November 5, 2003, a change of plea hearing was conducted wherein Ingersoll pled guilty to both counts alleged against him. Accordingly, Ingersoll and his counsel had the videotape in their possession for nearly a month prior to the change of plea hearing. Given this timeline, Ingersoll's argument that he was rushed in the review of the videotape is not persuasive.

[¶ 17] Moreover, the transcript of the change of plea hearing plainly evidences that Ingersoll entered his guilty pleas knowingly, intelligently, and voluntarily. At the hearing the following colloquy transpired:

> THE COURT: Have you been induced or threatened by anyone to plead one way or another here today?
>
> [INGERSOLL]: No.
>
> THE COURT: You're making your plea voluntarily then?
>
> [INGERSOLL]: Yes.
>
> THE COURT: Are you making your plea after consultation with your attorney, ...

and you are satisfied with his representation?

> [INGERSOLL]: Yes.
>
> THE COURT: [Appointed counsel], have you had an opportunity to fully consult with Mr. Ingersoll concerning his proposed plea here today and any proposed plea agreement in the case?
>
> [APPOINTED COUNSEL]: I have, your honor.

[¶ 18] Ingersoll tangentially also argues that had he been aware of Officer Bjorklund's statements made at the end of the traffic stop videotape, he could have more effectively argued at his suppression hearing that the traffic stop was merely pretextual in nature. However, this court has long established that when a criminal defendant solemnly admits in open court that he is guilty of the offense charged, he may not thereafter raise claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Kitzke*, at ¶ 8 (citing *Smith v. State*, 871 P.2d 186, 188–89 (Wyo.1994); *Davila v. State*, 831 P.2d 204, 205–06 (Wyo.1992); and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir.1992)). In addition, Ingersoll's reliance on the case of *Damato v. State*, 2003 WY 13, ¶ 12, 64 P.3d 700, ¶ 12 (Wyo.2003), to show the arguments he would have made had he been aware of the statements is misplaced given the fact that this court did not publish that opinion until January 29, 2003, and Ingersoll's suppression hearing took place some many months before on August 16, 2002.

> [¶ 19] W.R.Cr.P. 32(d) provides that if a motion to withdraw a plea is made after sentencing, a plea "may be set aside only to correct manifest injustice." "Manifest injustice" contemplates a "situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party." *McCarthy v. State*, 945 P.2d 775, 776 (Wyo. 1997). It is, in part, intended to address " ' "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent

---

1. A guilty plea is valid only when it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Herrera v. State*, 2003 WY 25, ¶ 17, 64 P.3d 724, ¶ 17 (Wyo.2003) (citing *Mehring v. State*, 860 P.2d 1101, 1109 (Wyo.1993)).

with the rudimentary demands of fair procedure." ' " *United States v. Blackwell*, 127 F.3d 947, 956 (10th Cir.1997) (quoting *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), cert. denied, 508 U.S. 943, 113 S.Ct. 2424, 124 L.Ed.2d 645 (1993) and F.R.Cr.P. 32(d)). The party seeking to withdraw his pleas bears the burden of demonstrating manifest injustice. *State v. McDermott*, 962 P.2d 136, 139 (Wyo.1998). Justification for this heightened standard for withdrawal of a plea after sentencing is based in the

> "practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process."

*Id.* at 138 (quoting *Hicklin v. State*, 535 P.2d 743, 749 (Wyo.1975) and *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963)) (emphasis in original).

A district court has discretion in determining whether a party has proved manifest injustice. Absent an abuse of that discretion, we will not disturb the district court's determination. *McDermott*, 962 P.2d at 138. A district court's decision to deny a motion to withdraw a plea "will not be reversed for an abuse of discretion so long as the district court reasonably could conclude as it did." *Nixon v. State*, 4 P.3d 864, 869 (Wyo. 2000).

*Browning v. State*, 2001 WY 93, ¶¶ 27–28, 32 P.3d 1061, 1069–70 (Wyo.2001).

*Reyna v. State*, 2001 WY 105, ¶ 27, 33 P.3d 1129, ¶ 27 (Wyo.2001).

[¶ 20] Review of the record before us establishes that it would not be unjust to hold Ingersoll to his guilty pleas. Ingersoll did not meet his burden of proof that he had suffered manifest injustice. While the State's failure to provide him the videotape until October 9, 2003, was certainly incorrect, in this case this failure was not mistakably or indisputably prejudicial. As noted, after reviewing the videotape and consulting with his attorney, Ingersoll had the opportunity to foresee any possible defenses prior to pleading guilty to the alleged charges asserted against him. Therefore, the district court did not abuse its discretion when it refused to grant Ingersoll's motion to withdraw his guilty pleas.

### Ineffective Assistance of Counsel

[¶ 21] Ingersoll also argues that his defense counsel was ineffective for not attacking, by way of a second suppression motion, the consensual nature of the search of his person or his possessions, and the failure of Officer Bjorklund to advise him of his rights before questioning him. As noted above, this court has declared that when a criminal defendant pleads guilty, that defendant waives appellate review of all claims that are not jurisdictional in nature or that do not challenge the voluntariness of the plea. *Kitzke*, at ¶ 8.

[¶ 22] Furthermore, we do not find Ingersoll's arguments persuasive because the actions of Ingersoll's counsel were within the wide range of professionally competent assistance. After Ingersoll gave consent to Officer Bjorklund to search the vehicle he was driving, Officer Bjorklund asked Ingersoll if he had anything "on him." In response to this question, Ingersoll emptied his pockets, producing, in part, a pack of cigarettes. After Officer Bjorklund asked permission to examine the pack of cigarettes, Ingersoll voluntarily exposed the contents of the cigarette pack within Officer Bjorklund's plain view revealing the methamphetamine. Further, after Officer Bjorklund obtained Ingersoll's consent to search the vehicle, it was permissible for Officer Bjorklund to conduct a minimally intrusive search of Ingersoll's person for safety reasons. *Putnam v. State*, 995

P.2d 632, 637 (Wyo.2000). *See also United States v. Manjarrez*, 348 F.3d 881, 886–87 (10th Cir.2003).

[¶ 23] A police officer is not required to inform a driver that he is free to leave before asking the driver additional questions. *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir.1999) (citing *United States v. Gordon*, 173 F.3d 761, 765 (10th Cir.1999)). *In accord see Burgos–Seberos v. State*, 969 P.2d 1131, 1134 (Wyo.1998). Therefore, although Officer Bjorklund did not inform Ingersoll that he was free to leave, he was not required to do so. Even when a police officer has no basis for suspecting criminal activity beyond that which prompted a traffic stop, the police officer may generally ask questions of an individual so long as it is not conveyed that compliance with any requests is required. *Ferris v. State*, 355 Md. 356, 735 A.2d 491, 500 (1999). *See also generally Parkhurst v. State*, 628 P.2d 1369, 1376 (Wyo.1981). Officer Bjorklund did not convey the message to Ingersoll that compliance with his request to search the vehicle was required.

[¶ 24] Ingersoll also argues that Officer Bjorklund failed to appropriately give Ingersoll a Miranda warning after he found the methamphetamine within Ingersoll's cigarette pack. However, even if Officer Bjorklund was mandated to advise Ingersoll of his applicable rights after the methamphetamine was discovered as called for under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), sufficient reasons for Ingersoll's arrest existed at that time. Therefore, Ingersoll would have been searched incident to his arrest for possessing methamphetamine, rendering the discovery of the marijuana on his person inevitable.

[¶ 25] Given the facts and applicable law, Ingersoll failed to demonstrate that the district court would have granted any additionally proffered suppression motion. Hence, it must be concluded that Ingersoll's defense counsel rendered Ingersoll reasonably competent assistance of counsel.

### CONCLUSION

[¶ 26] For the foregoing reasons, Ingersoll's convictions and sentences are affirmed.

VOIGT, J., filed a specially concurring opinion.

VOIGT, Justice, specially concurring.

[¶ 27] I generally concur in the majority's resolution of the issues. I write separately because I am troubled by three related aspects of this case. First, witnesses who are about to testify swear "to tell the truth, *the whole truth,* and nothing but the truth." Second, trial court decisions on suppression motions are supposed to be based upon the totality of the circumstances. Third, prosecutors are supposed to be committed to justice, not just to winning.

[¶ 28] In contravention of these principles, the prosecutor in this case carefully orchestrated his direct examination of the arresting officer to prevent the trial court from learning the "whole truth." By asking the officer when he first *contacted* the appellant, the prosecutor made sure the trial court did not learn that the officer had actually followed the appellant from a suspected "dope house" where the officer had been conducting surveillance. Furthermore, neither the officer nor the prosecutor timely revealed to the appellant or to the trial court that a videotape had been made of the traffic stop.[1] Coincidentally, perhaps, a review of the videotape would have made the appellant and his attorney aware of the surveillance and the fact that the officer was actually tailing the appellant at the time of the traffic stop.

[¶ 29] I am satisfied that the majority's analysis of the controlling legal issues is correct, and that, in the end, the appellant was not prejudiced by the conduct of the officer and the prosecutor.[2] Nevertheless, I believe

---

1. The appellant learned of the existence of the videotape during a conversation with a member of the staff at the detention center.

2. In particular, as the majority notes, a pretext stop is not, per se, unlawful, and the appellant

does not challenge the legitimacy of the traffic stop in this case.

it is incumbent upon this Court to note its disapproval of prosecutorial or police conduct that "crosses the line." If the State had an interest in continuing secret surveillance of the "dope house" in the hope of catching bigger fish, the proper approach was to let this small fry go, rather than produce only a portion of the truth for the trial court.