2006 WY 62

**Jeffrey H. REICHERT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. 05–71, 05–172.**

Supreme Court of Wyoming.

May 17, 2006.

Dion J. Custis, Cheyenne, Wyoming, for appellant.

Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General, for appellee. Argument by Mr. Causey.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] Jeffrey H. Reichert pled guilty to two counts of felony conversion of grain in violation of Wyo. Stat. Ann. § 11–11–117(b) (LexisNexis 2003)[1] and one count of felony check fraud in violation of Wyo. Stat. Ann. § 6–3–702(a)(b)(iii) (LexisNexis 2003).[2] The district court sentenced him to a term of three to five years for felony check fraud and two terms of eight to fourteen years for felony conversion with the sentences to be served consecutively, but suspended execution of the second felony conversion sentence and imposed instead fourteen years of supervised probation to begin upon Mr. Reichert's release from incarceration. Dissatisfied with his sentence, Mr. Reichert appeals, claiming the district court erred in denying his motions to withdraw his guilty plea; ineffective assistance of counsel; judicial bias; and prosecutorial bias. We affirm.

## ISSUES

[¶ 2] Mr. Reichert presents the following issues for our review:

I. The appellant's case was prejudiced due to the denial of the motion to withdraw the guilty plea and the motion to recuse the judge.

II. The appellant was denied effective assistance of counsel.

---

1. Wyo. Stat. Ann. § 11–11–117(b) provided in pertinent part:

   (b) Any warehouseman or person operating a warehouse who converts to his own use or that of another, any grain stored or accepted for storage of the value of five hundred dollars ($500) or more, is guilty of a felony and shall be imprisoned for not to exceed fourteen (14) years.

2. Wyo. Stat. Ann. § 6–3–702(a)(b)(iii) provided:

   (a) Any person who knowingly issues a check which is not paid because the drawer has insufficient funds or credit with the drawee has issued a fraudulent check and commits fraud by check.

   * * *
   (b) Fraud by check is:
   * * *
   (iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the fraudulent check was for the sum of five hundred dollars ($500.00) or more, or if the offender is convicted of fraud by check involving two (2) or more checks issued within any sixty (60) day period in the state of Wyoming totaling five hundred dollars ($500.00) or more in the aggregate.

III. The appellant was prejudiced due to the judicial bias caused by the conflict of interest since one of the growers was related to the judge.

IV. The appellant was prejudiced due to the judicial bias caused by the political influence regarding his case.

V. The appellant was prejudiced due to the conflict of interest with the prosecuting attorney.

The State re-phrases the issues as follows:

I. Did appellant receive effective assistance of counsel?

II. Did the district court abuse its discretion in denying appellant's motion to withdraw guilty plea?

III. Did judicial bias exist in appellant's case, and was appellant's motion for recusal of judge improperly denied?

IV. Did prosecutorial bias exist in appellant's case?

## FACTS

[¶ 3] On September 14, 2004, the Goshen County attorney's office filed an information and criminal warrant in circuit court alleging Mr. Reichert committed ten counts of felony conversion of grain in violation of Wyo. Stat. Ann. § 11–11–117(b) and one count of felony check fraud in violation of Wyo. Stat. Ann. § 6–3–702(a)(b)(iii). The information and warrant alleged on ten occasions from December 10, 2003, until April 6, 2004, Mr. Reichert converted to his own use over $500,000 worth of grain, specifically pinto beans, accepted from customers for storage at his warehouse. The information also alleged Mr. Reichert issued a check from his bank account dated August 12, 2004, for $1,675.00 without having sufficient funds in the account to cover the check.

[¶ 4] Mr. Reichert was arrested and made an initial appearance in circuit court on September 14, 2004. Defense counsel entered an appearance on behalf of Mr. Reichert on September 20, 2004. Defense counsel and the State began plea agreement discussions as a result of which on October 21, 2004, the county attorney's office reduced from ten to two the felony conversion counts. The amended information alleged

the conversions giving rise to the first count took place between June 1, 2000, and August 31, 2003, and those giving rise to the second count occurred between September 1, 2003, and August 31, 2004. With regard to the felony check fraud count, the amended information specified fifteen insufficient funds checks Mr. Reichert allegedly wrote on his account in the months of July and August, 2004.

[¶ 5] On October 27, 2004, Mr. Reichert appeared in district court and, pursuant to the plea agreement, entered a plea of guilty to the charges. On January 10, 2005, the district court held a sentencing hearing. Mr. Reichert presented the testimony of three witnesses: his wife, a friend and a former customer. The State presented testimony and statements from fifteen victims of Mr. Reichert's offenses, including the testimony of a state senator. Most of the victims asked the district court to impose a harsh sentence. The State argued for incarceration and restitution. Defense counsel argued for probation. After hearing the testimony and arguments, the district court sentenced Mr. Reichert as follows: Count I (felony conversion of grain)—8 to 14 years incarceration; Count II (felony conversion of grain)—8 to 14 years incarceration; Count III (felony check fraud)—3 to 5 years incarceration. The district court ordered the sentences on Counts I and III to be served consecutively, suspended the sentence on Count II and ordered Mr. Reichert to be placed on supervised probation for a period of fourteen years following his release from incarceration. The district court also ordered Mr. Reichert to pay restitution in the amount of $1,026,204.61.

[¶ 6] New counsel entered an appearance on behalf of Mr. Reichert and filed a notice of appeal from the judgment and sentence. Three days later, he filed a motion to stay the time for filing an appellate brief in this Court in order to allow him to file a motion to withdraw his guilty pleas in the district court. This Court granted the motion to stay.

[¶ 7] On April 18, 2005, Mr. Reichert filed motions in district court: 1) for recusal of the prosecuting attorney; 2) for recusal of the

district judge; and, 3) to withdraw his guilty pleas. He asserted the prosecutor was biased and prejudiced because members of his family were victims of the alleged crimes and the judge was biased and prejudiced because his brother was a victim of the crime. Additionally, Mr. Reichert claimed his sentence was the result of political influence. In support of his motion to withdraw his guilty plea, Mr. Reichert asserted: his plea was based on representations of defense counsel that as a first time offender, Mr. Reichert likely would receive a sentence of probation; he was forced to plead guilty; he was not advised of the possible consequences of a guilty plea or defenses to the charges; the prosecutor agreed to work with defense counsel to reach a sentencing agreement but the plea was entered without any such agreement; the judge and the prosecutor had conflicts of interest to which defense counsel did not object; the judge's decisions were influenced by outside factors; and he did not enter his plea knowingly or voluntarily.

[¶ 8] As a consequence of Mr. Reichert's motions, a special prosecutor assumed representation of the State and another judge was assigned to consider the recusal motion. After a hearing, the alternate judge denied the recusal motion, finding it was not promptly made and the supporting affidavit was insufficient to demonstrate the original judge was incapable of rendering his decisions and performing his functions impartially. Specifically, the alternate judge concluded no evidence was presented that the judge's brother was a victim of the crime as alleged and a judge may not be removed for cause "simply on the basis that [his] brother was, at one time, a customer of the defendant." Upon entry of the order denying the recusal motion, the original district judge resumed authority over the case.

[¶ 9] On June 7, 2005, the district court conducted a hearing on Mr. Reichert's motion to withdraw his guilty plea. In addition to considering the parties' written submissions on the motion, the district court heard the testimony of Mr. Reichert, his sister, his wife and the attorney who represented him through his sentencing hearing. On June 9, 2005, the district court issued a decision let-

ter in which it concluded Mr. Reichert failed to establish any basis for withdrawing his guilty plea. The district court entered an order denying the motion to withdraw guilty plea on June 23, 2005, and Mr. Reichert appealed to this Court from that order.

## STANDARD OF REVIEW

[¶ 10] The standard for withdrawing a guilty plea is governed by W.R.Cr.P. 32(d). *Ingersoll v. State,* 2004 WY 102, ¶ 12, 96 P.3d 1046, 1050 (Wyo.2004). Pursuant to that rule, a defendant must show "manifest injustice" when he seeks to withdraw his plea after sentencing. *Id.* We review whether a trial court properly denied a post-sentence motion for withdrawal under an abuse of discretion standard, meaning we determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Id.* The findings of fact that led to denial of a motion to withdraw a guilty plea are subject to the clearly erroneous standard of review. *McCard v. State,* 2003 WY 142, ¶ 8, 78 P.3d 1040, 1043 (Wyo.2003).

[¶ 11] The examination of a claim of ineffective assistance of counsel requires a showing that counsel's performance was deficient and the deficient performance prejudiced the defense. *Ingersoll,* ¶ 13, 96 P.3d at 1050. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must show his counsel failed to render the sort of assistance offered by a reasonably competent attorney and the failure to render such assistance prejudiced the defense of the case. *Ingersoll,* ¶ 14, 96 P.3d at 1050. When a guilty plea is challenged based upon ineffective assistance of counsel, the defendant, to establish prejudice, must show a reasonable probability, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial. *Ingersoll,* ¶ 13, 96 P.3d at 1050. A strong presumption is invoked that counsel rendered adequate and reasonable assistance. *Id.* The burden is on the defendant to overcome this presumption. *Id.*

## DISCUSSION

### 1. Denial of Motion to Withdraw Guilty Plea

■ [¶ 12] W.R.Cr.P. 32(d) provides in pertinent part as follows:

If a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

Mr. Reichert moved to withdraw his guilty plea after sentence was imposed; therefore, he was required to demonstrate manifest injustice in order to succeed on his motion.

" 'Manifest injustice' contemplates a 'situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party. It is, in part, intended to address a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.' "

*Reyna v. State,* 2001 WY 105, ¶ 27, 33 P.3d 1129, 1137–38 (Wyo.2001) (citations omitted).

[¶ 13] Mr. Reichert claims his motion to withdraw his guilty plea should have been granted because: 1) he relied on defense counsel's assurances that he would be sentenced to probation and did not know he would be sentenced to a lengthy prison term; and 2) the judge and prosecutor were biased and prejudiced. He asserts these factors constituted manifest injustice. We address them separately.

### a. Reliance on Advice From Counsel

■ [¶ 14] The first question raised by Mr. Reichert's claim is whether he entered his plea knowingly and intelligently. A guilty plea is valid only when it represents a voluntary and intelligent choice among the alternative courses of action open to a defendant. *Ingersoll,* 2004 WY 102, ¶ 15, 96 P.3d at 1051, fn. 1. Pursuant to W.R.Cr.P. 11(b), the district court was required to inform Mr. Reichert of: the nature of and penalties for the charges filed against him; his right to be represented by an attorney, plead not guilty, be tried by a jury, and choose not to testify; his right to plead guilty and waive his right to trial; and the fact that any statements made by him in court under oath could be used against him. Pursuant to W.R.Cr.P. 11(d), the district court was required to ensure Mr. Reichert's plea was voluntary.

The court shall not accept a plea of guilty ... without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty ... results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

With the W.R.Cr.P. 11 requirements in mind, we begin our analysis of Mr. Reichert's claim by reviewing what occurred at the arraignment.

[¶ 15] Mr. Reichert appeared in district court for his arraignment on October 27, 2004. The district court asked Mr. Reichert whether he had been able to talk with his attorney about the case and if he was satisfied with his representation so far. Mr. Reichert responded affirmatively to both questions. The district court reviewed the charges and the maximum possible penalty for each and asked Mr. Reichert whether he understood the charges and penalties and had any questions about them. Mr. Reichert said he understood and had no questions. The district court inquired whether Mr. Reichert understood everything up to that point in the hearing. Mr. Reichert said he did.

[¶ 16] The district court then explained the presumption of innocence, the State's burden to prove each of the elements of the crimes charged and Mr. Reichert's right to plead not guilty, go to trial, confront the witnesses against him, present his own witnesses, have legal representation, testify or not testify and appeal. The district court asked Mr. Reichert if he understood these rights, whether they made sense to him and whether he had any questions. Mr. Reichert stated he understood his rights and had no questions. The district court advised Mr.

Reichert he also had the right to plead guilty and by doing so would give up his right to a trial, the presumption of innocence and his right to silence. The district court stated:

No one can ever make you plead a certain way. You always have the right to plead not guilty. If anyone should try to coerce you or force you into how you are going to plead, you should let [counsel] know or let me know. That would be improper.

Do you feel that anyone has tried to do that to you up to this point in the case?

Mr. Reichert responded, "No."

[¶ 17] The district court then asked about the terms of the plea agreement. The State explained Mr. Reichert agreed to plead guilty to all three counts and provide a factual basis for each count. In exchange, the State agreed not to file additional charges and to obtain the agreement of the United States not to file additional charges against Mr. Reichert. Defense counsel concurred in the State's description of the agreement. The district court repeated the essential terms of the agreement and stated:

Mr. Reichert, under this plea agreement, there is no guarantee of what the sentence will be; and you will have a felony conviction on three counts.

\* \* \*

Is that the agreement as you understand it, sir?

MR. REICHERT: Yes.

THE COURT: Is that satisfactory to you?

MR. REICHERT: Yes.

THE COURT: Has anyone forced you or coerced you to enter into this agreement?

MR. REICHERT: No.

Mr. Reichert then pleaded guilty to the three counts.

[¶ 18] As the factual basis for his plea, Mr. Reichert testified on the dates identified in the information he, in his capacity as the owner and operator of Mountain States Commodities, acquired beans worth over $500 from customers, sold the beans and converted the money to his own use. He also testified on the dates in question he wrote checks totaling more than $3,000 on his bank account without having sufficient funds in the account to cover the checks.

[¶ 19] The record does not indicate Mr. Reichert's pleas and the factual basis for them were given other than voluntarily, knowingly and intelligently. The district court fully informed him concerning the maximum penalties for the charged offenses and advised him no one could make him plead a certain way and if anyone tried to do so he should inform the court. He was further specifically advised there were no guarantees about sentencing.

[¶ 20] Likewise the transcript of the January 10, 2005, sentencing hearing contains nothing suggesting Mr. Reichert wished to withdraw his pleas, was coerced into entering them or entered them without being advised of his rights. The first suggestion the pleas were coerced or made unknowingly and unintelligently came after the district court imposed a more severe sentence than either Mr. Reichert or defense counsel expected. Then, represented by substitute counsel, Mr. Reichert moved to withdraw his guilty pleas, claiming he did not enter them knowingly and intelligently because defense counsel failed to adequately explain the potential consequences of the pleas. Specifically, he claimed defense counsel "promised" he would receive probation if he pled guilty, he relied on defense counsel's "promise" in pleading guilty and manifest injustice occurred when he was sentenced not to probation as defense counsel "promised" but instead to a lengthy prison term.

[¶ 21] In addition to the district court's advisements, Mr. Reichert testified defense counsel discussed the maximum sentences with him before the arraignment. Mr. Reichert also testified defense counsel informed him early on he believed probation was likely because Mr. Reichert had no prior criminal history, was a long-standing member of the community, and saved the court a lengthy trial and associated expense. He testified defense counsel advised him he thought the district court would look upon him favorably and sentence him to probation if he cooperated fully with the State and federal agents

and agreed to convey all of his assets as restitution to the victims. Mr. Reichert testified defense counsel later told him he was concerned the district court might impose a prison sentence of eighteen to twenty-four months. Consistent with his discussions with Mr. Reichert, however, defense counsel argued for probation at sentencing.

[¶ 22] Defense counsel's testimony at the hearing on the motion to withdraw the guilty pleas was consistent with Mr. Reichert's testimony as far as the latter testimony went. Like Mr. Reichert, defense counsel testified he initially believed his client would receive probation because he had no prior criminal record, had long-standing involvement in the community and seemed willing to cooperate. Defense counsel also testified, as did Mr. Reichert, he only later became concerned the court might impose a prison term. Defense counsel further testified the reason for his concern was, over the course of his representation, the seriousness of the allegations giving rise to the charges grew. Specifically, defense counsel testified a much greater amount of money was involved than Mr. Reichert initially had told him.

[¶ 23] Defense counsel testified Mr. Reichert told him at first he had the assets to fully re-pay his customers. As the case progressed, it became apparent the amount was much greater than Mr. Reichert had indicated and he did not have the financial resources to pay the people back. Defense counsel testified:

> Early on in my representation of Mr. Reichert, when I thought we were dealing with 13,000 bags of beans or 20,000—as it progressed, there was a point in time when we were dealing with criminal charges. But I still believed—because he told me he had the ability to do something about this—I still believed that if he did the things I asked him to do there was a very good chance of him getting probation. And I'm sure I told him that.

> But the case continued to change, dramatically. And there came a point in time when it was obvious that he hadn't told me everything. And I was dealing—by the time this case was over, I was dealing with

a far more serious set of facts than I ever imagined at the beginning.

[¶ 24] Despite the increasing seriousness of the charges, defense counsel testified he personally did not believe Mr. Reichert would be sentenced to a lengthy period of incarceration; it was his hope if Mr. Reichert did as he recommended in terms of pleading guilty, repaying the victims, cooperating with the State and acknowledging his wrongdoing, the district court would be lenient in sentencing. Defense counsel testified, however, Mr. Reichert did not do as he recommended and as the sentencing approached, he became more convinced Mr. Reichert would spend time in jail. Defense counsel testified he told Mr. Reichert the State's case against him was mounting and becoming more and more serious. Defense counsel testified both he and the district court advised Mr. Reichert a prison sentence was possible. Still, defense counsel argued for probation at sentencing. Defense counsel testified he was shocked when the district court imposed sentence and believed it was excessive.

[¶ 25] In *Hicklin v. State*, 535 P.2d 743 (Wyo.1975), we held the receipt of erroneous advice from counsel concerning the likely sentence was not a sustainable ground for withdrawing a guilty plea where there is no showing of actual reliance on statements of the prosecutor or judge in entering the plea. We adhere to that holding now. Although defense counsel's early belief that the sentence would likely be probation may have had some influence on Mr. Reichert's decision to plead guilty, the record shows Mr. Reichert's primary reason for pleading guilty was to avoid other charges.

[¶ 26] Mr. Reichert testified he told the judge at the arraignment his plea was voluntary because he believed if he did not plead guilty the United States would bring additional charges against him. He testified: "[T]he plea agreement was based primarily on the fact—or solely on the fact that the prosecution would keep the federal charges at bay." He also testified:

> [defense counsel] also indicated to me verbally in his office several times that if I don't accept the plea as it was stated, that it could go back to the drawing

board and—and [the prosecutor] could go back to the day when he was stating that there could be a possible 150 counts and this and that, and that if I didn't accept it that it could be changed just that fast.

Q. Okay. And are you stating now that for some reason you believe that that was not true?

A. Oh, I'm not saying that at all. *That's why I plead guilty.*

He said:

> I *was agreeing to those terms [of the plea agreement]* again, *only to avoid additional charges* that I felt were—were looming or lurking overhead if . . . I changed my mind. That's how [defense counsel] described it to me, that this was a one-shot deal, that the charges couldn't be negotiated here at sentencing, and that if I didn't go along with it now that it could upset the whole thing and additional charges could be filed.

(emphasis added).

■ [¶ 27] Thus, the record clearly shows Mr. Reichert entered into the plea agreement, having been fully informed of the charges to which he was pleading and the maximum penalties, expressly for the purpose of avoiding additional state and federal charges—charges which had the potential to result in an even lengthier sentence than the one ultimately imposed. The fact that Mr. Reichert agreed to plead guilty to avoid more serious charges and in the hope of receiving probation only to have the district court impose a more severe penalty than Mr. Reichert and defense counsel expected does not give rise to a "fundamental defect" resulting in "a complete miscarriage of justice" or an "omission inconsistent with the rudimentary demands of fair procedure." *Reyna*, ¶ 27, 33 P.3d at 1137–38.

[¶ 28] We conclude Mr. Reichert has failed to meet his burden of showing the district court abused its discretion when it denied his motion. Having carefully examined the record before us, we hold Mr. Reichert has not demonstrated the district court's ruling resulted in manifest injustice. He has

not shown a fundamental defect resulting in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Considering all of the circumstances, the district court's imposition of a more severe penalty than defense counsel believed was appropriate and advised Mr. Reichert was likely does not constitute manifest injustice.

### b. Prosecutorial and Judicial Bias

[¶ 29] Mr. Reichert also claims manifest injustice requiring reversal of the denial of his motion occurred when the district court judge and prosecutor remained on the case despite alleged personal biases. In the case of the judge, Mr. Reichert also claims manifest injustice occurred because the judge was improperly influenced by political and social pressure.

■ [¶ 30] Concerning the prosecutor's personal bias, Mr. Reichert testified three members of the prosecutor's family were victims of his offenses. He testified the prosecutor's father also was a leading member of a victim growers group made up of eight to twelve victims who acted as liaison between the prosecution and the victims. Additionally, the prosecutor was listed as the registered agent for the victim growers group.

[¶ 31] At the arraignment, the prosecutor disclosed his relationship with three of the victims.

> [The state]: The state would offer—and as you have probably observed in reading through the amended information, I have a family member, and a family member by marriage, and an extended family member, who are victims in this matter.
>
> I have reviewed the ethical rules which apply to conflicts and cannot find any conflict, nor do I think I have a personal conflict. I do not receive any pecuniary interest in the outcome of this case, directly or indirectly. I have disclosed that to [defense counsel] and Mr. Reichert from the very beginning. It's my understanding that they do not have any objection from a prosecution standpoint or defense standpoint with the prosecution for me to continue with the case; and I would like to

certainly present that to the court on the record, and you know if we have a response from [defense counsel] or Mr. Reichert.

THE COURT: [Counsel], the prosecutor has indicated that he doesn't feel he has a conflict of interest under the rules of professional responsibility, but I would call for your response to his disclosure that some of the alleged victims are related to him.

[Defense counsel]: Your Honor, [the state] and I have discussed this, and I agree with the representation he has made to the court, and we will agree with him that there is no conflict.

If he had concerns about the prosecutor's relationship with the three victims, Mr. Reichert did not inform the court at that time or any other time prior to raising the issue in his motion to withdraw his guilty plea. Once he raised the issue, the prosecutor removed himself from the case and a special prosecutor stepped in to represent the State. The special prosecutor represented the State at the hearing on Mr. Reichert's motion to withdraw his plea.

[¶ 32] Rule 1.7 of the Wyoming Rules of Professional Conduct addresses conflicts of interest in pertinent part as follows:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to ... a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

The comment to Rule 3.8, which addresses special responsibilities of prosecutors, states:

*[1]   A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural jus-*

*tice and that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate and varies in different jurisdictions.*

The comment references the ABA Standards of Criminal Justice Relating to Prosecution Function, which in Standard 3–1.3 provides:

(f) A prosecutor should not permit his or her professional judgment or obligations to be affected by his or her own political, financial, business, property, or personal interests.

In addition to these provisions, the preamble to the Rules of Professional Conduct states:

[8]  In the nature of law practice ... conflicting responsibilities are encountered. * * * The Rules of Professional Conduct prescribe terms for resolving such conflicts. Within the framework of these Rules many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the rules.

[¶ 33]  None of these provisions expressly prohibits a prosecutor from representing the State in a case where family members are victims of the offense charged. However ill-considered it might appear on the surface, we conclude no manifest injustice resulted from the prosecutor's representation of the State despite his familial relationship with three of the victims. We are satisfied the prosecutor promptly and fully disclosed the relationship. Nothing in the record suggests his relationship with the victims affected him in carrying out his responsibility to minister justice, influenced the outcome of the case or prejudiced Mr. Reichert in any way. In addition, Mr. Reichert waived any objection to the prosecutor's participation in the case. We hold the district court did not abuse its discretion in denying the plea withdrawal motion on the basis of prosecutorial bias.[3]

---

**3.** Federal prosecutors are statutorily prohibited from representing the government in any matter in which they, their family or their business associates have an interest. 18 U.S.C. § 208(a). Although our statutes and rules do not contain a similar prohibition, it would seem advisable for prosecutors to avoid even the appearance of impropriety, by refraining from representing the state in prosecutions involving family members as victims or defendants.

[¶ 34] We turn to the claim of the judge's personal bias. Mr. Reichert testified he accepted delivery of the judge's brother's beans for storage, sold the bean crop without the brother's knowledge and when the brother later decided to sell, generated the appropriate paperwork and presented a check for payment. Knowing there were not sufficient funds in the account to cover the check, Mr. Reichert asked the brother to wait to cash the check. A few days later, the brother asked Mr. Reichert's wife who worked at the bank to deposit the check. She did so and the check bounced. Mr. Reichert made good on the check and the judge's brother was not one of the victims of Mr. Reichert's crimes. Still, Mr. Reichert asserts, the fact that the judge's brother was a customer likely prejudiced the judge.

[¶ 35] Mr. Reichert also claims the district court judge was biased and prejudiced because he was influenced by the involvement of political officials and the public. In his motion to withdraw his guilty plea, Mr. Reichert stated: "The political presence of the governor and some of his comments and the testimony of Senator Meier may have influenced Judge Kautz into imposing an excessive sentence...." Mr. Reichert testified:

> [A]fter the arraignment, after the plea was entered, that's really when things started to really stir within the community.
>
> That's when [the judge] started to receive political pressure. He received a tremendous amount of social pressure, as well as the personal pressure that he had from his relationship with his brother being involved.

Mr. Reichert further testified a newspaper reported the governor attended a meeting with the grower victims. When asked whether the department of agriculture could extend Mr. Reichert a loan to pay back the victims, leaving the victims whole and Mr. Reichert owing the department of agriculture, the newspaper reported the governor as saying "Mr. Reichert's not going to be making much money where he's going in the near future." Mr. Reichert pointed to that statement from the newspaper, as "the political influence that might have affected the outcome of this sentence."

[¶ 36] Mr. Reichert also cited the testimony of a state senator at the sentencing hearing as improperly influencing the judge. The senator, one of fifteen victims who testified or presented a statement at the hearing, asked the judge to sentence Mr. Reichert to four to eight years imprisonment for check fraud to be served consecutively to ten to fourteen years for conversion, and a suspended sentence of ten to fourteen on the second conversion count.

[¶ 37] We have defined bias and prejudice as follows: prejudice involves a prejudgment or forming of an opinion without sufficient knowledge or examination; bias is a leaning of the mind or an inclination toward one person over another. *Cline v. Sawyer*, 600 P.2d 725, 729 (Wyo.1979). A mere allegation of judicial bias is insufficient to form a basis for disqualification; sufficient facts showing bias must be presented in the affidavit supporting the motion. *Pearson v. State*, 866 P.2d 1297, 1300 (Wyo.1994). Pursuant to W.R.C.P. 40.1(b)(2), Mr. Reichert was required to submit an affidavit stating sufficient facts to show the existence of judicial bias or prejudice against him.[4] Pursuant to W.R.C.P. 40.1(b)(2), the judge should have been recused if a reasonable person, assuming the facts in the affidavit were true, could infer that he had a bias or prejudice prevent-

---

4. RULE 40.1 TRANSFER OF TRIAL AND CHANGE OF JUDGE

(b) *Change of Judge.*
* * *

(2) Disqualification for Cause. Whenever the grounds for such motion become known, any party may move for a change of district judge on the ground that the presiding judge: (A) has been engaged as counsel in the action prior to being appointed as judge; (B) is interested in the action; (C) is related by consanguinity to a party; (D) is a material witness in the action; or (E) is biased or prejudiced against the party or the party's counsel. The motion shall be supported by an affidavit or affidavits of any person or persons, stating sufficient facts to show the existence of such grounds. Prior to a hearing on the motion any party may file counter-affidavits. The motion shall be heard by the presiding judge, or at the discretion of the presiding judge by another judge. If the motion is granted, the presiding judge shall immediately call in another judge to try the action.

ing him from dealing fairly with Mr. Reichert.

[¶ 38] Mr. Reichert submitted an affidavit stating in pertinent part:

* * *

2. I owned and operated Mountain States Commodities.

3. Lowell Kautz, Wayne Korell, Beth Korell, and Alan Korell were all customers of Mountain States Commodities.

4. As a long time resident of Torrington, Wyoming, I know that Lowell Kautz is the brother of Judge Keith Kautz.

5. During court Pat Korell [the prosecutor] admitted that his father, step-mother and uncle were all victims in this matter.

6. Pat Korell's father was appointed to the board of the victim-grower's committee which helped to establish how they would receive restitution.

We conclude these facts were not sufficient to cause a reasonable person to infer the judge was biased or prejudiced against Mr. Reichert. We agree with the conclusion reached by the district judge assigned to decide the recusal motion—a judge may not be removed for cause simply on the basis that his brother was, at one time, a customer of the defendant.

[¶ 39] We likewise find nothing in the testimony presented at the plea withdrawal hearing from which a reasonable person could infer the judge was biased or prejudiced. Some of Mr. Reichert's testimony concerning the judge's bias, such as the governor's statement at the victim growers' meeting as reported in the newspaper, was hearsay. Evidence presented in support of a motion to disqualify a judge is generally insufficient when it is supported merely by hearsay. *In re Claim of Farman*, 841 P.2d 99, 101 (Wyo.1992). Much of the rest of Mr. Reichert's testimony was speculation, which we also find insufficient to support a motion to disqualify. Simply stated, there was no evidence showing the district court judge prejudged the case or formed an opinion without sufficient knowledge or examination. There likewise was no showing the judge had a leaning of the mind or an inclination toward one person over another. We hold the district court did not abuse its discretion in denying the plea withdrawal motion.

**2. Ineffective Assistance of Counsel**

[¶ 40] The only ineffective assistance of counsel claims that survived Mr. Reichert's guilty pleas are claims directly related to the voluntariness of his plea.

"Where a defendant has entered a guilty plea, he may challenge his subsequent conviction on appeal only with respect to matters which affect the voluntariness of his plea or the subject-matter jurisdiction of the trial court. When a guilty plea has been entered upon the advice of counsel, the voluntariness of that plea may depend on the extent to which that advice comports with the constitutional guarantee to the effective assistance of counsel."

*Rutti v. State*, 2004 WY 133, ¶ 21, 100 P.3d 394, 404 (Wyo.2004) (citations omitted). Mr. Reichert bears the burden of proving both that counsel's performance was deficient and the deficient performance produced actual prejudice. *Id.*

[¶ 41] To warrant reversal on his claim of ineffective assistance of counsel, Mr. Reichert must show counsel failed, in light of all circumstances existing at the time of the alleged act or omissions, to employ such judgment or render such assistance as would have been offered by a reasonably competent attorney under like circumstances. *Rutti*, ¶ 23, 100 P.3d at 405. Counsel's ineffectiveness must be so serious as to undermine this Court's confidence that the outcome was fair. *Id.* Moreover,

"When an attorney has allegedly misadvised his client with respect to the entry of a guilty plea, a determination must be made of whether the decision to plead and forego the defense of his case resulted in prejudice to the client. That determination involves two interrelated questions: whether, in the absence of counsel's error, the recommendation of a reasonably competent attorney concerning the plea would differ from that given; and whether, absent the error, the outcome of a trial would have been more

advantageous to the client than the result of his plea. The defendant may also establish the necessary prejudice by proof of circumstances indicating that, in deciding whether or not to plead guilty, he placed special emphasis on the challenged aspect of his attorney's advice. He must suggest to the reviewing court a plausible reason why, had his representation been as he claims it should have been, he would have chosen to forsake the benefits of the plea agreement for the risks of trial."

*Id.* (citations omitted).

[¶ 42] From the record before us, we conclude Mr. Reichert has failed to meet his burden of proving either defense counsel's performance was deficient or he suffered prejudice as a result. The record simply does not support Mr. Reichert's claim that defense counsel did not properly advise him concerning the effect of a guilty plea and misled him to believe he would receive probation or a shorter prison sentence.

[¶ 43] Based upon the information he had early on in the case, defense counsel advised Mr. Reichert he thought probation was likely. As circumstances changed and it became apparent the amount of money involved was much greater than he had been told and Mr. Reichert did not have the ability to pay it back, defense counsel advised Mr. Reichert he was concerned jail time was a real possibility. Defense counsel testified he explained the terms of the plea agreement to Mr. Reichert and was certain he understood them. He, and the district court, explained the maximum sentences that could be imposed for the crimes committed. Defense counsel testified Mr. Reichert knew the prosecutor intended to argue for prison time at sentencing. Defense counsel testified he made no promises to Mr. Reichert other than to represent him the best he could. He did not force Mr. Reichert to plead guilty, threaten him or promise him he would get probation. He told Mr. Reichert his sentence depended in large part on his ability to pay back the money he owed people for their crop. He testified:

> I told him one of the things he needed to do right away was to find a job and start paying these people back. I told him he needed to raise money in whatever way he could. Sell everything you have except your home, to try to pay these people back. I tried to get him to understand the seriousness of what he had done and to—you know, act accordingly.
>
> When all of those things sort of came together—he wasn't able to come up with the money, he wasn't finding work, he continued to act as though—almost as though he were the victim in this. That's when I became convinced that he probably was going to spend some time in prison. I still did not think he would spend the time that he was sentenced to.
>
> * * *
>
> And [the prosecutor] indicated to me that if [Mr. Reichert] made some real progress in the direction of paying these people that—his attitude, or his statement to me about how we would argue sentencing at sentencing would change. He didn't say flat out to me—you know, I'm going to do this or the other thing. He made clear to me that if Mr. Reichert took some real steps in the direction of making these people whole, his approach would be different at sentencing. But that never occurred.

From the record before us, we conclude defense counsel provided the assistance a reasonably competent attorney would have provided under similar, and changing, circumstances. Mr. Reichert has failed to carry his burden of demonstrating defense counsel's performance was deficient.[5]

[¶ 44] Mr. Reichert presents no argument as to how his decision to plead guilty and forego trial prejudiced him. He fails to assert, much less show, how the outcome would have been more advantageous to him had he gone to trial rather than entering a plea.

---

5. Even if the record established defense counsel's performance was deficient, which it does not, Mr. Reichert's claim of ineffectiveness would fail. We have previously held that a defendant is not prejudiced by advice which is merely misleading if the trial court, prior to taking his plea, has corrected any misunderstanding engendered by that advice. *Wilson v. State,* 2003 WY 59, ¶ 11, 68 P.3d 1181, 1188 (Wyo.2003).

Absent the presentation of any argument on these key issues, we hold Mr. Reichert has failed to carry his burden of proving he was prejudiced by counsel's alleged ineffectiveness.

[¶ 45] Mr. Reichert also contends defense counsel's assistance was ineffective in that he failed to assert the claims of prosecutorial and judicial bias. The record shows defense counsel considered both issues and discussed them with Mr. Reichert. Defense counsel testified he believed the prosecutor and the judge were fair and would handle the case in an unbiased manner. Defense counsel testified after discussing the issues with Mr. Reichert, he made the tactical decision that Mr. Reichert was better off with the assigned prosecutor and judge than he would be asking for a different judge and prosecutor. We find nothing in the record to support the claim that these decisions were deficient. Rather, we conclude they were consistent with the tactical decisions of a reasonably competent attorney acting under similar circumstances.

[¶ 46] Affirmed.