# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1328

_____

Charles L. Witherspoon,

    Appellant,

v.

James D. Purkett,

    Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted:  December 17, 1999
Filed:  April 14, 2000

_____

Before BEAM, HEANEY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

During a confrontation over damage to his automobile, Charles Witherspoon, then age sixteen, shot and killed another young man after being surrounded by the victim and several of his friends.  Pursuant to his counsel's recommendation, Witherspoon pleaded guilty to second-degree murder and armed criminal action, in return for the prosecutor's recommendation for  two concurrent twenty-year prison sentences, rather than face trial and a potential life sentence if convicted.  He was sentenced in accord with the plea agreement.  The question presented in this petition for habeas relief under 28 U.S.C. § 2254 is whether Witherspoon was denied his Sixth

Amendment right to effective assistance of counsel because of his counsel's failure to interview Witherspoon's eyewitness companion during the shooting, who would have been his key self-defense witness had Witherspoon rejected the plea offer and taken his chances at trial. The district court[1] denied habeas relief on the ground that Witherspoon had not shown prejudice from his counsel's failure to interview the eyewitness companion. We affirm.

## I. Facts and Background

On August 7, 1991, petitioner asked his brother's girlfriend, Rhodesia Wilson, to drive him around town to help him find out who had tampered with his car the previous night. She agreed, and they eventually spotted a person Witherspoon knew by the name of Dino. Witherspoon got out of the car and began questioning Dino, at which point the victim (a leader of a rival gang) and three or four other young men approached. An argument started between Witherspoon and the victim, and as the group of youths surrounded Witherspoon, the victim challenged Witherspoon to a fight. Witherspoon alleges that a young man by the name of "Rabbit" slipped a gun to him sometime during the confrontation, and Witherspoon eventually brandished the weapon when he felt he was about to be assaulted by the victim and the rest of the group. Witherspoon claims the same group had "jumped" and beaten his brother on an earlier occasion. Witherspoon testified that after he brandished the gun, the victim continued to approach him with his hands in the air in a fighting position, at which point Witherspoon shot the victim twice, allegedly in self-defense. The group dispersed, Witherspoon ran home, and the victim died from the gunshot wounds.

Witherspoon was indicted for second-degree murder, a class A felony offense with a range of punishment from ten to thirty years or life in prison, and armed criminal

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

action, with a minimum punishment of three years in prison. On the day trial was to begin, Witherspoon's counsel recommended that he plead guilty to both charges in return for concurrent sentences of twenty years in prison. The state trial judge accepted Witherspoon's guilty plea and sentenced him to concurrent twenty-year sentences. At his § 2254 hearing, Witherspoon testified that his counsel explained to him that counsel had talked to Ms. Wilson but that her testimony would hurt his case, at which point Witherspoon believed he had no choice but to plead guilty. Witherspoon's present assertion that his attorney misled him about having interviewed Ms. Wilson is supported directly by deposition testimony from Ms. Wilson and indirectly by testimony from his trial counsel, whose depositions were both introduced into evidence during the § 2254 hearing. Ms. Wilson testified that she was never interviewed by Witherspoon's counsel about the shooting and trial counsel testified that he had no recollection of ever interviewing her. The district court denied Witherspoon's petition for habeas relief and granted a certificate of appealability on the issue of whether counsel's failure to interview the eyewitness companion amounts to ineffective assistance of counsel.

## II. Analysis

As a preliminary matter, we reject the state's argument that Witherspoon's claim is not properly before this court because of a failure to preserve the issue for federal review. We agree with the district court that Witherspoon's claim is not procedurally barred from federal court review because it was adequately raised on appeal in state court. We therefore address the merits of his claim.

In order to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that his counsel's performance was both deficient and prejudicial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). See also Hill v. Lockhart, 474 U.S. 52, 58 (1985)(applying Strickland's two-part test to ineffective assistance of counsel claims arising in context of guilty pleas). Ms. Wilson was an

eyewitness to the shooting and to the events leading up to it. Every other eyewitness to the shooting was a witness for the prosecution, which makes her Witherspoon's key witness in support of his assertion that the shooting was done in self-defense or because of victim provocation. Although the record shows that counsel did attempt to find "Rabbit," tried to interview the three state eyewitnesses to the shooting, and had character witnesses ready to testify on behalf of Witherspoon, the record also shows that counsel did nothing more than read the police reports regarding Rhodesia Wilson's account of the shooting. There is no evidence that counsel, or any of his investigatory assistants, ever personally interviewed Ms. Wilson about what she saw that day. In fact, the record convinces us that Witherspoon's counsel never interviewed Ms. Wilson. First, Ms. Wilson testified in her deposition under oath that she was never interviewed. Second, counsel himself has no recollection of interviewing Wilson. Third, though only a portion of the trial counsel's file could be located, the part that was found shows that Wilson was never interviewed by trial counsel's investigatory assistants. In addition, counsel testified that his common practice was to obtain a correct address for any witness that he interviewed, and the address listed for Wilson just prior to trial was an old and incorrect address from which she had moved one week after the shooting took place. Based on this particular set of facts, we think it very likely that counsel's failure to interview Ms. Wilson, the eyewitness companion during the shooting, amounts to deficient performance under Strickland. For purposes of this appeal, however, we need not and do not decide that specific issue because we agree with the district court that Witherspoon has failed to show the necessary prejudice as required by Strickland and Hill.

The crucial and more difficult issue, however, is whether Witherspoon suffered prejudice due to his counsel's alleged deficient performance. Witherspoon argues that but for his counsel's failure to interview Ms. Wilson, he would not have followed the advice of his counsel to plead guilty to second-degree murder. A defendant can establish prejudice if "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have *insisted* on going to

4

trial." Hill, 474 U.S. at 59 (emphasis added). In cases involving claims of failure to investigate, a defendant can establish prejudice by showing that the discovery of evidence would have caused counsel to change his recommendation as to the plea offer. See id. This assessment "will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id. It is admittedly difficult to determine, after the fact, whether counsel would have changed his recommendation had he interviewed Ms. Wilson, whether Witherspoon would have insisted on going to trial had he known the substance of Wilson's probable testimony at trial, and whether her testimony likely would have changed the outcome of a trial. After carefully reviewing the record, we agree with the district court that petitioner has failed to make a sufficient showing of prejudice necessary for this court to grant habeas relief.

A comparison of Ms. Wilson's deposition testimony (her probable testimony had she been called as a witness) with her comments to the police as found in the police report and with Witherspoon's testimony during his § 2254 hearing convinces us that counsel would not have changed his recommendation had the substance of Wilson's likely testimony been known prior to the guilty plea. Although Ms. Wilson's testimony supports many of the details of Witherspoon's version of events, there are important inconsistencies that would severely weaken Witherspoon's chances at trial of convincing a jury that he acted in self-defense or was guilty only of a lesser degree of homicide. The first, and most important, is Ms. Wilson's version of the second gunshot. According to the reports of the investigating officers, she originally told the police that Witherspoon fired the second shot while standing over the victim, a statement which in all likelihood is fatal to Witherspoon's self-defense theory. This is in direct contradiction to her deposition testimony where she explained that the two shots were fired in rapid succession and then Witherspoon stood over the victim. In this particular case, the inconsistency goes to the heart of the self-defense theory. In addition, not only were her statements to the police tape recorded (thereby probably precluding an assertion that she never made the statements or that the police officers misinterpreted her statements), but the coroner's report also supports her original and

5

earlier story. The coroner's report states that the second shot entered the victim in the left lower side of his back, which is physical evidence strongly supporting the story that the second shot was fired while the victim was already on the ground or at least no longer an immediate threat to Witherspoon.

Another inconsistency that discredits Witherspoon's self-defense theory has to do with the position of the victim's hands immediately prior to the shooting. Witherspoon asserts that the victim's hands were raised and in a fighting position at the time he fired the gun, whereas Ms. Wilson stated that the victim's hands were at his side, thus discrediting Witherspoon's assertion that deadly force was justified. In sum, although Ms. Wilson's testimony would have corroborated Witherspoon's version of events in many areas, her testimony in several critical areas would have severely undermined Witherspoon's chances of prevailing at trial. In these circumstances, we do not think that counsel would have changed his recommendation had he interviewed Ms. Wilson prior to the guilty plea.

We also think, notwithstanding Witherspoon's assertions to the contrary, that Witherspoon would not have insisted on going to trial had Ms. Wilson been ready to testify. As explained above, the state would have attacked Wilson's credibility with the inconsistencies between her two stories of the shooting and would have stressed the damaging portions of her testimony. In addition, the state also had the coroner's report and three of its own eyewitnesses whose statements to the police gave no credence to Witherspoon's self-defense or manslaughter theories. It is true that defense counsel had filed a motion to exclude the three state eyewitnesses for failure to appear prior to trial for depositions, but the motion had never been ruled upon prior to the guilty plea. At most, we think the state trial court would have granted a continuance of trial until such time as defense counsel had a chance to interview the three eyewitnesses, but in the end they likely would have been allowed to testify. The only other witness who might have added support to Witherspoon's story of self-defense was his mother, but the admissibility of Witherspoon's comments to her shortly after the shooting is uncertain.

6

Finally, Witherspoon's story about how he obtained the murder weapon--that a young man by the name of "Rabbit," a person he had given a ride to on a previous occasion, handed it to him during the confrontation--is questionable. "Rabbit" was never located nor specifically identified, and most damaging of all, Witherspoon informed the judge at the plea hearing under oath that he bought the weapon himself. (One of the three state eyewitnesses had told the police that Witherspoon withdrew the weapon from his right rear pants pocket). It is doubtful that Ms. Wilson's potential testimony would have altered the outcome of a trial when weighed against the inconsistencies in her statements as well as the police and coroner's reports and the three other eyewitnesses who would have testified for the state.

For all of these reasons and on the record before us, we conclude that there is no reasonable probability that Witherspoon would have continued to plead not guilty and would have insisted on going to trial, particularly when facing the prospect of a possible sentence of life in prison versus the twenty-year deal. We therefore find that Witherspoon has failed to make the necessary showing of prejudice required for this court to grant his petition for habeas relief.

III. Conclusion

For the foregoing reasons, the district court's denial of Witherspoon's request for habeas relief under 28 U.S.C. § 2254 is hereby affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

7