2008 WY 7

**Charles Wayne PALMER, Jr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–273.**

Supreme Court of Wyoming.

Jan. 25, 2008.

Representing Appellant: Lynn Boak, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Dana J. Lent, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Convicted of three counts of sexual assault, Charles Wayne Palmer claims that trial counsel was ineffective for allowing him to plead guilty, and that the district court should have granted a post-sentence motion to withdraw Palmer's guilty plea.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Palmer states his only issue as follows:

1. Did [Palmer] receive effective assistance of counsel in entering his guilty plea and did the district court abuse its discretion in denying [Palmer's] motion to withdraw plea?

The State separates Palmer's issue into two separate issues:

1. Did [Palmer] receive effective assistance of counsel when entering his guilty plea?
2. Did the District court abuse its discretion by denying [Palmer's] motion to withdraw plea?

## FACTS

[¶ 4] Palmer lived with his girlfriend and her three teenaged daughters in Wheatland, Wyoming. On September 29, 2005, the daughters, TW, SW, and JW, ages fourteen, sixteen, and seventeen, reported to Wheatland police that Palmer had been sexually assaulting them three times a week for nearly two years. That same day, Palmer agreed to go to the police station to discuss his involvement in an ongoing case.

[¶ 5] At the station, Palmer was informed that TW, SW, and JW had accused him of sexually assaulting them for the past two years. After being read his *Miranda* rights, and after reading them to himself, Palmer signed a Statement of *Miranda* Rights, verifying that he "read the above statement of my rights and I understand them." Furthermore, the statement provided that Palmer was "willing to answer questions now without having an attorney present."

[¶ 6] Apparently, after signing the waiver, Palmer confessed in detail about his ongoing sexual encounters with the three girls.[1] Palmer was arrested on September 30, 2005, and charged with three counts of second degree sexual assault. However, on October 31, 2005, an amended information was filed charging Palmer with thirty-seven counts of second and third degree sexual assault and one count of aggravated assault and battery.

[¶ 7] In May of 2006, Palmer decided to change his plea from not guilty to guilty. According to a plea agreement negotiated with the prosecuting attorney, Palmer pled guilty to three counts of second degree sexual assault in exchange for the dismissal of the remaining thirty-four counts. A change of plea hearing was held on June 6, 2006, wherein the court explained Palmer's rights to him. The court also explained the punishments he faced. When given an opportunity to ask questions, Palmer declined.

[¶ 8] At his sentencing on September 12, 2006, Palmer received three consecutive sentences of 8–16 years. His sentences were handed down after each victim testified, giving detailed accounts of Palmer's repeated assaults. Each girl also testified regarding her recovery, indicating that she was functioning well and improving. Defense witnesses also testified before Palmer was sentenced. Friends and family attested to the network of support that would be available to him, and Palmer's counselor testified regarding Palmer's remorse.

---

1. The only confession contained in the record on appeal is nine pages and handwritten. Palmer references a videotaped confession, but it was not made part of the appellate record.

[¶ 9] A few days after sentencing, Palmer sought new legal counsel. Five days after the Judgment and Sentence were entered, Palmer filed a motion to withdraw his guilty plea, claiming his first confession was given while under the influence of drugs, and that defense counsel was ineffective because of his personal distaste for Palmer's conduct. After a hearing, the district court denied Palmer's motion, finding that he failed to present any evidence to substantiate his claims and demonstrate manifest injustice. Palmer appeals the district court's denial of his Motion to Withdraw Plea and the entry of the Judgment and Sentence.[2]

suant to that rule, a defendant must show "manifest injustice" when he seeks to withdraw his plea after sentencing. We review whether or not a trial court properly denied a post-sentence motion for withdrawal under an abuse of discretion standard, meaning that we determine whether or not the trial court could reasonably conclude as it did and whether or not any facet of its ruling was arbitrary or capricious. *Id.* The findings of fact that led to denial of a motion to withdraw a guilty plea are subject to the clearly erroneous standard of review. *McCard v. State,* 2003 WY 142, ¶ 8, 78 P.3d 1040, 1043 (Wyo.2003).

## STANDARD OF REVIEW

[¶ 10] The examination of a claim of ineffective assistance of counsel requires a showing that counsel's performance was deficient and the deficient performance prejudiced the defense. *Ingersoll v. State,* 2004 WY 102, ¶ 13, 96 P.3d 1046, 1050 (Wyo.2004). In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must show that his counsel failed to render the sort of assistance offered by a reasonably competent attorney, and that the failure to render such assistance prejudiced the defense of the case. *Id.,* ¶ 14, 96 P.3d at 1050. When a guilty plea is challenged based upon ineffective assistance of counsel, the defendant, to establish prejudice, must show a reasonable probability that, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial. *Ingersoll,* ¶ 13, 96 P.3d at 1050. A strong presumption is invoked that counsel rendered adequate and reasonable assistance. The burden is on the defendant to overcome this presumption. *Id.*

[¶ 11] The standard for withdrawing a guilty plea is governed by W.R.Cr.P. 32(d). *Ingersoll,* ¶ 12, 96 P.3d at 1050. Pur-

## DISCUSSION

[¶ 12] Following the State's lead, we will divide Palmer's single issue on appeal into two separate discussions. In the first, we will address whether or not Palmer received effective assistance of counsel when entering his guilty plea. In the second, we will address whether or not the district court abused its discretion when it denied Palmer's motion to withdraw his guilty plea.

### Ineffective Assistance of Counsel

[¶ 13] Palmer insists that he received ineffective assistance of counsel at the sentencing hearing wherein his counsel "did no adversarial testing of the prosecution's case." Palmer also claims that his defense counsel coerced him into pleading guilty on the basis of the "overwhelming evidence against him," specifically his confession, which Palmer characterizes as having "enough discrepancies," including whether or not his *Miranda* rights were read prior to the confession, such that counsel should have sought suppression of the confession.

[¶ 14] Contrary to Palmer's claims, the State argues that the record on appeal shows that Palmer pled guilty to avoid potential

2. Palmer actually filed his notice of appeal on the same day as the hearing on the motion to withdraw his plea, November 6, 2006. His Notice of Appeal designated the Judgment and Sentence as the appealable order. The Order Denying Defendant's Motion to Withdraw Plea was entered two days later, on November 8, 2006. While this appeal was pending, Palmer filed a motion to

remand for an evidentiary hearing on his claim that trial counsel was ineffective in failing to challenge Palmer's confession. This Court denied the motion for remand, noting that "... the district court, in denying the motion to withdraw plea, has considered and rejected essentially the same claims."

conviction on an additional thirty-five charges, which carried a potential aggregate sentence of six hundred and seventy years, and that his counsel was indeed effective. The State further contends that the record proves Palmer acknowledged receiving the *Miranda* warning prior to confessing, and that the confession was valid. Finally, the State points out Palmer's failure to refer to any portion of the record that substantiates his claim that defense counsel was deficient or that prejudice occurred.

[¶ 15] Here, the only ineffective assistance of counsel claims that survived Palmer's guilty plea are those directly related to the voluntariness of his plea. *Reichert v. State*, 2006 WY 62, ¶ 40, 134 P.3d 268, 279 (Wyo.2006).

> Where a defendant has entered a guilty plea, he may challenge his subsequent conviction on appeal only with respect to matters which affect the voluntariness of his plea or the subject-matter jurisdiction of the trial court. When a guilty plea has been entered upon the advice of counsel, the voluntariness of that plea may depend on the extent to which that advice comports with the constitutional guarantee to the effective assistance of counsel.

*Id.* (quoting *Rutti v. State*, 2004 WY 133, ¶ 21, 100 P.3d 394, 404 (Wyo.2004) (citations omitted)). Palmer bears the burden of proving both that counsel's performance was deficient and that the deficient performance produced actual prejudice. *Id.*

[¶ 16] In analyzing Palmer's ineffectiveness claim, we must determine whether or not trial counsel's actions were outside the range of professionally competent assistance, and if the representation so undermined the adversarial process, that the outcome cannot be relied upon as having produced a just result. *Reyna v. State*, 2001 WY 105, ¶ 19, 33 P.3d 1129, 1134-35 (Wyo.2001). We have previously addressed a post-sentencing allegation of ineffective assistance of counsel regarding the entry of a guilty plea in both *Reichert* and *Rutti*. In reviewing that claim in the latter case, this Court required Rutti to demonstrate that, in deciding to plead guilty, he placed special emphasis on the challenged aspect of his attorney's advice.

*Rutti*, ¶ 23, 100 P.3d at 405. We applied a two-part test to determine if Rutti suffered prejudice resulting from counsel's advice: (1) Whether or not the recommendation of a reasonably competent attorney regarding the plea would differ from that given; and (2) whether or not, absent the error, the outcome of the case would have been more advantageous than the terms of the plea agreement. *Id.*

[¶ 17] This principle, adopted by this Court in *Lower v. State*, 786 P.2d 346, 349 (Wyo.1990), provides two ways a defendant may demonstrate prejudice from ineffective assistance pertaining to a guilty plea. *See Ingersoll*, ¶ 12, 96 P.3d at 1050; *Kitzke v. State*, 2002 WY 147, ¶ 9, 55 P.3d 696, 699 (Wyo.2002); *Becker v. State*, 2002 WY 126, ¶ 11, 53 P.3d 94, 98 (Wyo.2002); *Reyna*, ¶ 9, 33 P.3d at 1132; *Chapman v. State*, 2001 WY 25, ¶ 6, 18 P.3d 1164, 1168 (Wyo.2001); *Brock v. State*, 981 P.2d 465 (Wyo.1999); *Mehring v. State*, 860 P.2d 1101, 1112-13 (Wyo.1993); *but see Wilson v. State*, 655 P.2d 1246, 1258 (Wyo.1982) (citing only trial outcome as method of proving prejudice).

[¶ 18] We take this opportunity to clarify *Rutti*, which could be read as limiting a defendant's means of demonstrating prejudice to a single test: whether or not the outcome of a trial would have been more advantageous than the terms of the plea. While we emphasized in *Rutti* that, in many circumstances, a defendant's complaint concerning his counsel's performance will often lead to an objective analysis regarding the outcome of a trial, we adhere to the principle introduced in *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), that when a guilty plea is challenged based upon ineffective assistance of counsel, the defendant, to establish prejudice, must show that there is a reasonable probability that, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial.

[¶ 19] We consider the rule introduced in *Hill*, and later applied in *Lower*, consonant with *Rutti*. *Rutti* simply emphasized that if a defendant does not assert a plausible reason why he would have forsaken the benefits of the plea agreement had counsel's advice

been different, the probable outcome of a trial provides an objective measure of the risk he faced. Taking into consideration the risks of trial, we can then weigh the likelihood that the defendant would have rejected the plea agreement.

[¶ 20] Similarly, in examining prejudice pursuant to *Hill,* other courts have considered the strength of the prosecution's case as circumstantial evidence of whether or not the defendant would have pled guilty. *See, e.g., Weeks v. Snyder,* 219 F.3d 245, 259–60 (3d Cir.2000); *Witherspoon v. Purkett,* 210 F.3d 901, 903–04 (8th Cir.2000); *Warner v. United States,* 975 F.2d 1207, 1214 (6th Cir.1992); *United States v. Horne,* 987 F.2d 833, 835–36 (D.C.Circ.1993); *Panuccio v. Kelly,* 927 F.2d 106, 109 (2d Cir.1991); *Holmes v. United States,* 876 F.2d 1545, 1551 (11th Cir.1989); *Hooper v. Garraghty,* 845 F.2d 471, 475–76 (4th Cir.1988); *Iaea v. Sunn,* 800 F.2d 861, 865–66 (9th Cir.1986); *Key v. United States,* 806 F.2d 133, 138–39 (7th Cir.1987); *United States v. Giardino,* 797 F.2d 30, 32 (1st Cir. 1986). However, none of these cases held that the defendant must show that the prosecution's case would have failed at trial. Inquiry into the probable outcome of a trial as a factual circumstance does not create a new standard for establishing prejudice. *Miller v. Champion,* 262 F.3d 1066, 1074–75 (10th Cir.2001), *cert. denied,* 534 U.S. 1140, 122 S.Ct. 1092, 151 L.Ed.2d 990 (2002).

Accordingly, in light of the Supreme Court's opinion in *Lockhart,* our own precedent concerning prejudice in the context of a guilty plea, and the overwhelming weight of authority among the other federal circuits, we hold the district court erred by requiring Miller to prove a reasonable probability existed not only that he would have insisted on trial but for his counsel's mistakes, but also that there was a likelihood that he would have prevailed at trial. Of course, the "assessment [of whether the defendant would have insisted on changing his plea] will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial," *Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. 366, but the ultimate issue that the

court has to determine is whether the defendant would have changed his plea. *Miller,* 262 F.3d at 1074–1075.

[¶ 21] In *Rutti,* we held that when the defendant pled guilty to sexual assault pursuant to a plea agreement, admitted committing multiple acts of sexual assault, and the victim corroborated his admission, he was not denied effective assistance of counsel. Furthermore, Rutti made absolutely no argument that the outcome of a trial would have produced a more advantageous result than the plea agreement, and as a result, we noted that the plea agreement was "extremely advantageous to Rutti" because it reduced the total number of charges against him. *Rutti,* ¶¶ 30–31, 100 P.3d at 408.

 [¶ 22] In this instance, Palmer pled guilty pursuant to an agreement, admitted committing multiple acts of sexual assault, and the victims corroborated his admission. Moreover, he obtained a substantial benefit by accepting the plea agreement whereby thirty-five serious felony charges were dropped. Like Rutti, Palmer fails to offer any additional argument whatsoever that the outcome of a trial on all counts charged would have produced a more advantageous result than the plea agreement and offers no argument or facts demonstrating that, if the representation was as he claims it should have been, he would have forsaken the benefits of the plea agreement for the risks of trial. In light of the total number of charges and the potential aggregate sentence on those charges of 670 years, Palmer's motivation to plead guilty is evident.

[¶ 23] Palmer further complains that he was urged to plead guilty by defense counsel based upon the fact that he had confessed and could be convicted on his confession alone, and that his confession was never challenged by his defense counsel. Palmer fails, however, to point to anything in the record that (1) supports his contention that his confession should have been suppressed, and (2) shows that defense counsel was lackadaisical in challenging the confession. In fact, the record supports the State's suggestion that the confession was legitimate. The written confession itself was nine pages long and very detailed in its account of repeated inci-

dents with each victim, including actions and statements. The record is also sparse regarding counsel's "refusal to take the case to trial." Instead, the record supports that defense counsel merely advised Palmer that "it was in [his] best interest to plead guilty." Both defense counsel and the district court explained the ramifications of pleading guilty. From the record, it is apparent that defense counsel did not force Palmer to plead guilty, nor did he threaten him or promise him anything. Rather, defense counsel provided adequate legal representation under the circumstances.

[¶ 24] Palmer fails to present an argument that shows how his decision to plead guilty and forego trial prejudiced him. He does mention that maybe at trial, one of the victims might not have been clear on dates or details of the sexual assaults, and cross-examination may have called the lack of clarity further into question. This appears to be wishful thinking on Palmer's part, because, perhaps most importantly, he fails to show how the outcome would have been more advantageous to him had he gone to trial rather than entering a plea. The record on appeal shows that the evidence against him was fairly substantial, even without his confession. Absent the presentation of any argument on these key issues, we hold that Palmer has failed to carry his burden of proving he was prejudiced by counsel's alleged ineffectiveness.

**Motion to Withdraw Guilty Plea**

[¶ 25] W.R.Cr.P. 32(d) provides in pertinent part as follows:

> If a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

Because Palmer moved to withdraw his guilty plea after sentence was imposed, he was required to demonstrate manifest injustice in order to succeed on his motion.

> "Manifest injustice" contemplates a "situation that is unmistakable or indisputable, was not foreseeable, and affects the sub-

stantial rights of a party." It is, in part, intended to address a "fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."

*Reyna,* ¶ 27, 33 P.3d at 1137–38 (citations omitted).

[¶ 26] Palmer claims that his motion should have been granted because his plea was not made knowingly or voluntarily. Specifically, Palmer avers that he was under the influence of muscle relaxants and pain medication when writing his nine-page confession, and that defense counsel failed to test the validity of the confession prior to counseling him to accept the plea agreement and was prejudiced against Palmer. Palmer argues these things together constituted manifest injustice.

[¶ 27] The first complaint by Palmer is that he did not enter his plea knowingly and voluntarily because he was under the influence of pain medication and muscle relaxers, which caused him to black out, sometimes for "days." A guilty plea is valid only when it represents a voluntary and intelligent choice among the alternative courses of action open to a defendant. *Ingersoll,* ¶ 15, 96 P.3d at 1051, n. 1. Pursuant to W.R.Cr.P. 11(b), the district court was required to inform Palmer of: (1) The nature of and the penalties for the charges filed against him; (2) his right to be represented by an attorney, plead not guilty, be tried by a jury, and choose not to testify; (3) his right to plead guilty and waive his right to trial; and, (4) the fact that any statements made by him in court under oath could be used against him. Pursuant to W.R.Cr.P. 11(d), the district court was required to ensure Palmer's plea was voluntary:

> The court shall not accept a plea of guilty ... without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty ... results from prior discussions between the

attorney for the state and the defendant or the defendant's attorney.

With the W.R.Cr.P. 11 requirements in mind, we begin our analysis of Palmer's claim by reviewing what occurred at the re-arraignment, when Palmer changed his plea from not guilty to guilty.

[¶ 28] Palmer appeared in person at the change of plea. The district court explained Palmer's constitutional rights to him, including the right to an attorney, the right to remain silent, the right to a presumption of innocence, the right to a speedy trial, the right to confront the evidence against him, the right to testify or not testify, and the right to appeal. When asked if he understood his rights, Palmer indicated that he did.

[¶ 29] Next, the district court explained the ramifications of being found or pleading guilty, including the restitution obligations Palmer would incur, that he would, because of the nature of the crimes charged, be required to register as a sex offender, and the loss of certain privileges, such as the right to vote, the right to serve on a jury, the right to hold public office, and the right to own and possess firearms. When asked if he understood everything, Palmer again said that he did.

[¶ 30] The district court continued its dialogue with Palmer, explaining the types of pleas from which Palmer could choose and that the court was not a party to any plea bargain that was in place. The court asked if Palmer had any questions up to that point in the hearing, and Palmer stated, "No, sir." The prosecuting attorney informed the court that there was a plea bargain in place, and the court asked Palmer if he had a chance to discuss the agreement with his attorney, and whether or not he understood the agreement. Palmer, again, stated that he both discussed the agreement with his attorney and understood it.

[¶ 31] The district court then explained the charges and the elements of the crimes charged, along with the penalties associated with each charge. After pleading guilty, Palmer answered questions by his attorney to establish the factual basis. He admitted to having sexual intercourse with all three girls.

[¶ 32] The record does not indicate that Palmer's guilty plea, or the factual basis for it, was given other than voluntarily, knowingly, and intelligently. The district court fully explained the implications behind pleading guilty. Furthermore, the transcript of the September 12, 2006 sentencing hearing contains nothing suggesting that Palmer wished to withdraw his plea, was coerced into entering it, or entered it without being advised of his rights. The hearing on Palmer's motion to withdraw his plea was similarly barren of evidence supporting Palmer's theory that his guilty plea was not voluntary. Palmer himself testified that his counsel simply *advised* him that it was in his best interest to plead guilty. Furthermore, there is no evidence that Palmer's counsel outright refused to take the case to trial.

[¶ 33] The record clearly shows that Palmer entered into the plea agreement fully informed of the charges to which he was pleading and aware of the maximum penalties. The record is also clear that Palmer entered the pleas under an agreement that, in exchange for those pleas, dropped thirty-five other charges. Taking into account the record on appeal, Palmer's argument does not give rise to a "fundamental defect" resulting in "a complete miscarriage of justice" or an "omission inconsistent with the rudimentary demands of fair procedure." *Reyna*, ¶ 27, 33 P.3d at 1137–38. Palmer did not meet his burden of showing that the district court abused its discretion when it denied his motion. Having carefully examined the record before us, we hold that Palmer has not demonstrated that the district court's ruling resulted in manifest injustice.

[¶ 34] Affirmed.