BURKE, Justice.
[¶1] Appellant, Jason E. Miller, pled no contest to one count of possession with intent to deliver marijuana in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii), and one count of felony possession of marijuana in violation of Wyo. Stat. Ann. § 35-7-1031(c)(iii). He contends his plea was involuntary as a result of ineffective assistance of counsel. We affirm.
ISSUE
[¶2] Appellant presents one issue:
Did the erroneous advice from Mr. Miller's fourth trial counsel, as to whether he could *1286 challenge his convictions after pleas of no contest, render his pleas involuntary?
FACTS
[¶3] On April 1, 2015, a bartender contacted the Sheridan County Sheriff's Office to report a man in the bar attempting to sell marijuana. A law enforcement officer responded to the call and found Appellant in a van in the parking lot. When Appellant rolled down the window, the officer smelled a strong odor of marijuana. During a search of the vehicle, the officer discovered marijuana, various drug paraphernalia, and a plastic baggie containing suspected methamphetamine. The officer arrested Appellant and subsequent testing of the substance found in the plastic baggie revealed it to be methamphetamine.
[¶4] The State charged Appellant with felony possession of marijuana, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(iii) ; possession of marijuana with intent to deliver, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii) ; and possession of methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i)(C) (LexisNexis 2015). Appellant did not appear for his preliminary hearing and the circuit court issued a bench warrant for his arrest. Appellant was returned to the custody of the State after being apprehended in Colorado, and the court appointed him new representation[1] by the public defender. Appellant was arraigned on August 5, and the district court set trial for January 25, 2016. The following day, Appellant filed a demand for a speedy trial.
[¶5] Appellant's court-appointed attorney requested a status hearing due to Appellant's complaints about his representation. At the hearing, Appellant fired his court-appointed counsel, claiming a lack of communication between them. The district court assigned new counsel to represent Appellant.
[¶6] Based on information obtained from Appellant's phone, the State charged Appellant in a separate docket with conspiracy to deliver marijuana, and that action was joined with the three existing charges. In January 2016, Appellant's third trial counsel filed a motion to continue the trial, asserting that he did not have enough time to review discovery provided by the State prior to the scheduled trial date and that he would not be able to provide effective assistance of counsel absent a continuance. The court granted the request for a continuance and reset the trial for March 21, 2016. Appellant proceeded to file hundreds of pages of pro se notes relating to his life in jail and his communications with his family and his attorneys.
[¶7] In January 2016, the State charged Appellant in a separate docket with two counts of interference with a peace officer stemming from an incident in which the State alleged he assaulted two detention officers in the Sheridan County Detention Center. At his arraignment, Appellant explained that he suffered from severe anxiety, depression, and sleeplessness. Due to his inability to listen to the district court or communicate adequately with his counsel, the district court ordered Appellant to undergo a competency evaluation. The court vacated Appellant's trial pending the results of the evaluation.
[¶8] The Wyoming State Hospital submitted a report of its evaluation on July 19, 2016, finding Appellant competent to proceed in the case. Immediately prior to the scheduled competency hearing, however, Appellant's counsel moved to withdraw due to a breakdown in communications with Appellant. The district court granted the motion.
[¶9] On August 22, 2016, Appellant's fourth trial counsel entered her appearance in the case. Shortly thereafter, Appellant's new counsel filed a motion to suppress evidence, a motion to dismiss for lack of a speedy trial, and a motion to dismiss based on alleged violations of Appellant's right to freedom of religion. Immediately prior to the hearing on those motions, however, Appellant and the State entered into a plea agreement. In exchange for Appellant's pleas of no contest to the charges of felony possession of marijuana and possession of marijuana with intent to deliver, the State agreed to dismiss the remaining charges and recommend a sentence of three to eight years for the possession *1287 charge and a concurrent sentence of three to five years for the charge of intent to deliver marijuana. The district court accepted Appellant's pleas, dismissed the remaining charges, and sentenced him in accordance with the State's recommendation.
[¶10] In December 2016, Appellant filed a notice of appeal from the judgment and sentence. Eight months later, Appellant filed a " W.R.A.P., Rule 21 Motion [to] Withdraw Pleas Based on Ineffective Assistance of Counsel" in the district court, and the court set the matter for hearing. Appellant claimed his counsel had incorrectly advised him he could pursue claims of ineffective assistance of counsel and violation of his right to a speedy trial in an appeal if he entered a no contest plea, and that this fact rendered his pleas involuntary.
[¶11] At the Rule 21 hearing, Appellant's trial counsel testified that Appellant stated he would agree to a three to eight-year term of incarceration and a three to five-year concurrent term, if he could plead no contest, be sentenced that same day, and leave the Sheridan County Detention Center. She told Appellant she believed that he could still appeal the issues of speedy trial and ineffective assistance of counsel. We will examine her testimony about the advice she gave Appellant more closely in our discussion. Appellant did not testify at the hearing.
[¶12] Following the hearing, the district court issued an order denying Appellant's motion. The court found Appellant did not meet his burden of showing that, but for his counsel's erroneous advice, he would have insisted on going to trial. Appellant appealed the denial of his motion, and the appeals were consolidated in this Court.
STANDARD OF REVIEW
[¶13] When reviewing a district court's decision regarding ineffective assistance of counsel, we employ this standard of review:
Review of a trial court's ruling on an ineffective assistance of counsel claim involves mixed questions of law and fact. Osborne [v. State , 2012 WY 123], ¶ 17, 285 P.3d [248,] 252 [ (Wyo. 2012) ]. We defer to the district court's findings of fact unless they are clearly erroneous. Cooper [v. State , 2014 WY 36], ¶ 20, 319 P.3d [914,] 920 [ (Wyo. 2014) ], citing Strandlien v. State , 2007 WY 66, ¶ 20, 156 P.3d 986, 992 (Wyo. 2007). The district court's conclusions of law, which include the question of whether counsel's conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct, are reviewed de novo . Strandlien , ¶ 20, 156 P.3d at 992, quoting Robinson v. State , 2003 WY 32, ¶ 16, 64 P.3d 743, 748 (Wyo. 2003).
Worley v. State , 2017 WY 3, ¶ 9, 386 P.3d 765, 769 (Wyo. 2017) (quoting Griggs v. State , 2016 WY 16, ¶ 37, 367 P.3d 1108, 1124 (Wyo. 2016) ). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Cowboy's LLC v. Schumacher , 2018 WY 61, ¶ 10, 419 P.3d 498, 501 (Wyo. 2018).
DISCUSSION
[¶14] The two-part test set forth in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) applies to challenges to guilty pleas based on ineffective assistance of counsel. Rutti v. State , 2004 WY 133, ¶ 22, 100 P.3d 394, 405 (Wyo. 2004) ; Hill v. Lockhart , 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In the context of guilty pleas, the first half of the Strickland test asks whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." Id. , 474 U.S. at 56, 106 S.Ct. at 369. The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. "[W]hen a guilty plea is challenged based upon ineffective assistance of counsel, the defendant, to establish prejudice, must show that there is a reasonable probability that, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial." Palmer v. State , 2008 WY 7, ¶ 18, 174 P.3d 1298, 1302 (Wyo. 2008). See also Hill , 474 U.S. at 59, 106 S.Ct. at 370 ("In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's *1288 errors, he would not have pleaded guilty and would have insisted on going to trial.").
[¶15] The district court declined to determine whether Appellant's counsel failed to render such assistance as would have been offered by a reasonably competent attorney. It instead based its decision on the lack of prejudice to Appellant. We will take the same approach. "If we conclude that a defendant fails to satisfy the prejudice prong, we need not address the performance of counsel prong." Rutti , ¶ 26, 100 P.3d at 407 ; Floyd v. State , 2006 WY 135, ¶ 13, 144 P.3d 1233, 1238 (Wyo. 2006).
[¶16] Appellant, relying primarily on the testimony of his counsel at the Rule 21 hearing, asserts that the record demonstrates a reasonable probability that he would have insisted on going to trial if not for his counsel's erroneous advice.[2] He points to this exchange:
[Appellate Counsel]: Was Mr. Miller - did he express any other concerns that needed to be addressed before he would be willing to accept a plea? And I can list what I remember you saying is that he wanted to be sentenced the day that he pled.
[Trial Counsel]: Correct.
[Appellate Counsel]: That he wanted a three to eight concurrent with a three to five.
[Trial Counsel]: Correct.
[Appellate Counsel]: That he wanted a post plea - or you probably explained - post plea PSR so he wouldn't have to wait for a PSR?
[Trial Counsel]: Right.
[Appellate Counsel]: That he wanted to be able to appeal and direct appeal the speedy-trial issue and ineffective assistance of counsel of counsels two and three?
[Trial Counsel]: Correct.
[¶17] A broader review of the testimony of Appellant's counsel, however, indicates that Appellant placed little weight on preserving his appeal rights. Counsel described her conversations with Appellant prior to his acceptance of the plea agreement:
What happened in that particular instance was the Court had set the hearing on the motions that I had filed. I came up the night before because it was snowing. And so I was able to go to the jail at 7:30, 8:00 o'clock that morning. I spent several hours with [Appellant] discussing how the motion hearing was going to go and what was going to happen. During this time, the guardian or the caretaker of his children had passed away, the grandmother. And so we were having a discussion about him wanting to find a way to be there for his daughters.
The State had made an offer and I think the deadline was the motion hearing itself. The plea offer at that time, if I remember correctly, was a four to eight and a three to five concurrent. So I was talking about those circumstances with him, especially as he was expressing a desire to want to be a father, and I was explaining to him that under the facts of his case, I didn't think that he was going to be successful at trial, that it likely was going to result in lengthy incarceration, and that if he truly wanted to be available for his children, that his best option might be entering a plea. He didn't indicate that that was what he wanted to do when I was sitting in the jail with him and I was preparing to go forward with those motions. I left the jail maybe at 11:00, somewhere in there, and had been preparing to do the motion hearing that the Court had set.
When I came to the hearing, I came 15 or 20 minutes early. ... It was at that point [Appellant] indicated to me that if the State of Wyoming would agree to a three to eight, and a three to five concurrent, if he could plead no contest, be sentenced that same day, get him out of the jail here in Sheridan County, that he wanted to enter a plea.
...
He asked me about speedy trial. I told him I wasn't absolutely certain, but I thought at the time that it was jurisdictional. And so I believed that those would *1289 survive a no contest plea. And so that was the advice I gave him, that I wasn't absolutely certain, but I thought that he could continue on with that.
...
I believe[d] he could raise ineffective assistance of counsel. I told him he could raise it on counsel, he could raise it on me, which he has. And so I believe[d] that that - I didn't need a conditional plea and I didn't talk to him about that. I believed that he could raise those issues, as it related specifically to the speedy trial, because that's the major complaint of his counsel. So those to me went hand in hand with one another.
Appellant's counsel stated that she did not know if the ability to pursue the ineffectiveness or speedy trial claims made Appellant willing to plead. She stated, "I wouldn't characterize it as that's the defining force that got him to plead." She further testified that "what we were really talking about was he wanted the three to eight and three to five."
[¶18] The district court determined that Appellant had not met his burden of showing that, but for his counsel's incorrect advice, he would have rejected the plea and insisted on going to trial. The court concluded that Appellant "did not present any evidence that he placed special emphasis" on the incorrect advice.[3] The court stated:
[Appellant's counsel] testified that although [Appellant] did discuss the possibility of an appeal, his decision to plead no contest was influenced by a variety of factors, including his desire to get out of prison as soon as possible so that he could be a father to his daughters. [Appellant's counsel] had advised him that he had little chance of winning at trial, and he was likely looking at a lengthy prison sentence if he did not accept a plea deal.
[Appellant's counsel] did testify that [Appellant] was convinced that his previous attorneys had been ineffective and that his speedy trial rights were violated, and these subjects came up frequently in her conversations with [Appellant]. However, when questioned at the hearing about the importance [Appellant] placed on his appellate rights, [Appellant's counsel] testified that [Appellant] never said he would not change his plea if he could not appeal the speedy trial and ineffective assistance of counsel issues. In fact, he was more focused on the length of the prison sentence and the possibility of being transported out of the Sheridan County Detention Center as soon as possible.
When the record is reviewed in the proper context, it supports the district court's determination.
[¶19] The United States Supreme Court's recent decision in Lee v. United States provides guidance on the question of whether a defendant has adequately demonstrated a reasonable probability he would have insisted on going to trial but for his counsel's erroneous advice. In Lee v. U.S. , --- U.S. ----, 137 S.Ct. 1958, 1963, 198 L.Ed.2d 476 (2017), the defendant, Jae Lee, entered a guilty plea to a charge of possession of a controlled substance with intent to deliver. During plea discussions with the government, Lee informed his attorney of his noncitizen status and repeatedly asked him whether he would face deportation as a result of the criminal proceedings. The attorney told Lee that he would not be deported as a result of pleading guilty. Id. Based on that assurance, Lee accepted the plea. Id. He soon discovered, however, that he was subject to mandatory deportation under the Immigration and Nationality Act. Upon learning that his counsel's advice had been incorrect, Lee filed a motion to vacate his conviction and sentence, asserting that his attorney had provided constitutionally ineffective assistance. Id. At the subsequent evidentiary *1290 hearing, both Lee and his plea-stage counsel testified that "deportation was the determinative issue in Lee's decision whether to accept the plea." Id.
[¶20] The Supreme Court determined that Lee had made an adequate showing that, had he been properly advised, he would have insisted on going to trial. In doing so, the Court indicated that, in evaluating a defendant's claim that he would have insisted on going to trial, courts should look to "contemporaneous evidence" in determining whether the defendant's assertion is substantiated:
"Surmounting Strickland 's high bar is never an easy task," Padilla v. Kentucky , 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." United States v. Timmreck , 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.
Lee , --- U.S. ----, 137 S.Ct. at 1967. The Court also indicated that, to a certain extent, courts should evaluate the likelihood of an acquittal if the defendant proceeded to trial. The appropriate inquiry focuses on the defendant's "decision making," which it noted "may not turn solely on the likelihood of conviction after trial." Id. , --- U.S. ----, 137 S.Ct. at 1966. The Court continued:
A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea. See Hill , 474 U.S., at 59, 106 S.Ct. 366. Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.
But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. See INS v. St. Cyr , 533 U.S. 289, 322-323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years. Here Lee alleges that avoiding deportation was the determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation-even if it shaved off prison time-in favor of throwing a "Hail Mary" at trial.
Id. , --- U.S. ----, 137 S.Ct. at 1966-67 (emphasis in original).
[¶21] The Court concluded that, in the "unusual circumstances of [his] case," Lee had demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation. Lee , --- U.S. ----, 137 S.Ct. at 1967. After noting that both Lee and his attorney had testified that Lee would have gone to trial if he had known about the deportation consequences, the Court found "no question that 'deportation was the determinative issue in Lee's decision whether to accept the plea deal.' " Id. , --- U.S. ----, 137 S.Ct. at 1967. Quoting portions of its decision in Padilla , 559 U.S. at 364, 130 S.Ct. 1473, which indicated that "[d]eportation is an integral part-indeed, sometimes the most important part-of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes," the Court found "no reason to doubt the paramount importance Lee placed on avoiding deportation." Lee , --- U.S. ----, 137 S.Ct. at 1968. Accordingly, the Court reversed the judgment against Lee and remanded for further proceedings. Id. , --- U.S. ----, 137 S.Ct. at 1969.
*1291 [¶22] We apply the reasoning of the United States Supreme Court to this case. In contrast to Lee , Appellant did not testify at the hearing. The testimony from his trial counsel constitutes the only direct evidence of Appellant's decision making.
[¶23] That testimony undermines Appellant's claim. Her testimony indicates that the primary motivations for Appellant's acceptance of the plea agreement were his evaluation of the proposed term of incarceration, his desire to be sentenced immediately, and his eagerness to leave the Sheridan County Detention Center. She indicated that Appellant may have wanted to pursue his claims in an appeal after entry of his pleas, but her advice was that she "wasn't absolutely certain," but thought the speedy trial claim would survive the plea, and that she "believed" he could still raise a claim of ineffective assistance of counsel on appeal. There is no indication that Appellant asked for more certain advice or otherwise followed up with his counsel on these points. Appellant's counsel stated that she did not know if the ability to pursue his speedy trial and ineffectiveness claims made Appellant willing to plead, but that she "wouldn't characterize [that ability as] the defining force that got him to plead." Accordingly, she could not maintain with certainty that Appellant would have rejected his plea had he been correctly advised. "We have repeatedly stated that a claim of prejudice must be supported by more than bald assertions or speculation." Castellanos v. State , 2016 WY 11, ¶ 99, 366 P.3d 1279, 1305 (Wyo. 2016).
[¶24] Appellant also asserts that his numerous pro se filings alleging violations of his right to a speedy trial and asserting complaints against each of the first three attorneys appointed to represent him establish that he would have proceeded to trial. We do not agree. The filings do not establish that Appellant would have prevailed on those issues and do not provide insight with respect to the relative weight he assigned to pursuing these complaints on appeal. Even if these filings could be viewed as supporting Appellant's position, in light of the testimony of Appellant's counsel, the evidence is insufficient to demonstrate that the district court's findings are clearly erroneous. For the foregoing reasons, we find no error in the district court's determination that Appellant failed to establish he was prejudiced by the erroneous advice of his trial counsel.
[¶25] Affirmed.

Appellant's first counsel represented Appellant for a very brief time and was replaced following a disagreement with Appellant.

Although Appellant states the issue in this case in terms of voluntariness of his pleas, he presents his claim under the analytical framework of ineffective assistance of counsel, as set forth in Strickland , Hill , and Lee .

We have also recognized that the possibility of a better result at trial may be a relevant factor in assessing whether a defendant would have rejected a plea agreement.
[I]f a defendant does not assert a plausible reason why he would have forsaken the benefits of the plea agreement had counsel's advice been different, the probable outcome of a trial provides an objective measure of the risk he faced. Taking into consideration the risks of trial, we can then weigh the likelihood that the defendant would have rejected the plea agreement.
Palmer , ¶ 19, 174 P.3d at 1302-03. In this case, Appellant does not contend that the result would have been more favorable had he opted for trial or that he would have prevailed on the issues that he wished to preserve for appeal.